O'BRIEN ET AL. *v.* BRADLEY ET AL.

[No. 3,889. Filed November 13, 1901. Rehearing denied February 7, 1902. Transfer denied March 12, 1902.]

MUNICIPAL CORPORATIONS.—*Sewer Assessments.—Precept.—Rights of Mortgagee.—Redemption.—Quieting Title.*—The lien of a sewer assessment being paramount to all mortgage liens, a valid sale under a precept for the collection of the assessment confers upon the pur-

chaser an incipient title, subject to the statutory right of the owner, or the mortgagee thereof, to redeem within the year; and upon the execution of the treasurer's deed the holder thereof takes an absolute estate in fee simple, freed from the right of redemption, his title being unimpeachable and unencumbered.

From Madison Superior Court; *H. C. Ryan,* Judge.

Action by Patrick O'Brien and others against James M. Bradley and others to quiet title. From a judgment for defendants, plaintiffs appeal. *Reversed.*

*C. M. Greenlee* and *B. R. Call,* for appellants.

· *E. S. Boyer,* for appellees.

BLACK, C. J.—The appellants, Patrick O'Brien and John M. Call, claiming to be the owners in fee simple of a certain lot in the city of Elwood, sought to quiet their title against the alleged adverse claims of the appellees; the complaint being in ordinary form, not stating the source of title. The defendants were defaulted, except the appellee the National Loan and Savings Association of Indiana, which answered by denial and filed its cross-complaint, claiming to be the owner in fee simple of the real estate, and seeking to quiet its title, in like form, without stating the origin of its title. It also filed an answer wherein it offered to pay into court for the appellants any sum for which they might be found to hold a lien on the real estate. The appellants answered the cross-complaint and replied to the answer by denials. No question is made here upon the pleadings. There was a special finding, and the appellants have presented for consideration the court's conclusions of law.

From the statement of facts found, it appears that the appellee James M. Bradley was the owner in fee simple of the lot in question on the 10th of August, 1891, and thereafter until October 3, 1895; that at the former date the common council of Elwood passed a general ordinance concerning the improvement of streets and alleys and the building of sewers, fixing therein the manner of constructing sewers and drains in the city, and providing for the pay-

ment of the cost of constructing them, and for an estimate of the cost thereof, and for the assessment of the same upon the owners of lots and lands benefited thereby, and providing the manner of assessing and collecting such costs, and the manner in which the lien therefor should be enforced, and providing that the same should be in accordance with the provisions of the act of the General Assembly of this State, approved March 8, 1889, and an act amendatory thereof approved March 6, 1891 (being §§4288 to 4298 Burns 1894). The finding showed the construction of a certain sewer in Elwood by the appellant O'Brien as the contractor; an assessment therefor upon the lot in question; the issuing of a precept for the collection of the assessment; the sale of the lot thereunder by the city treasurer to the appellants, to whom the city treasurer executed a certificate of conveyance, and to whom he executed a deed of conveyance more than a year after the issuance of the certificate, no person having redeemed or offered to redeem the real estate from the sale during the year following the issuance of the certificate.

The court in its finding set out the various acts and proceedings relating to the construction of the sewer, the making of the assessment, and the sale and conveyance of the lot under the precept, at length and with particularity, from the passage of the resolution of necessity by the common council, on the 5th of August, 1892, to the passage of the resolution ordering the improvement, awarding the contract to O'Brien, and ordering the mayor to enter into contract with him, on the 15th of October, 1892, to the filing of the final estimate by the city engineer on the 18th of June, 1894, to the filing of the report of the committee of the common council on the final estimate, July 9, 1894, to the adoption of the report and the confirming and ordering of the assessment on the 19th of July, 1894 (the assessment against the lot in question being $10.53), to the issuing of the precept, under which on the 29th of September, 1894,

the sale was made and the certificate thereof was issued, on the presentation of which the deed was executed on the 3rd of October, 1895.

It was also found that on the 29th of October, 1892, the appellees James M. Bradley and wife executed a mortgage to the National Loan and Savings Association of Indiana for $500, which was recorded on the 2nd of November, 1892; and on the 6th of October, 1894, the mortgagee instituted suit in the Madison Circuit Court to foreclose the mortgage, neither of the appellants being parties to the suit. By inadvertence, it is not stated what property was mortgaged. On the 10th of December, 1894, the mortgagee recovered judgment against Bradley and wife for $673.88, and $27.53 costs of suit, and said mortgage was by the decree of the circuit court foreclosed, and an order was issued and directed to the sheriff "for the sale of said real estate for the payment of said debt, who, in pursuance of the commands therein, sold said real estate to the satisfaction of the judgment rendered in said foreclosure proceedings," etc., to the appellee the National Loan and Savings Association, for $680.61, and the sheriff issued to the purchaser a certificate of purchase. During more than a year thereafter no one paid or offered to pay any portion of the judgment or any sum of money in redemption of said real estate, and on the 11th of February, 1896, the purchaser surrendered the certificate to the sheriff, who then executed to the purchaser a deed, which was offered for record, but was not recorded because of the prior recording of the deed to the appellants; and, since the execution of the deed to the National Loan and Savings Association, it has been, and it still is, the holder and owner thereof, and has had possession of said real estate, and has collected the rents and profits thereof. The appellants, long before the institution of this suit, demanded possession, which was refused. The real estate was of the fair cash value of $700. On the 17th of May, 1897 (during the pendency of this suit), the National Loan

and Savings Association paid in to the clerk of the court below the sum of $31.50 for the use and benefit of the appellants, at which date the amount for which the real estate was purchased by the appellants, together with interest and penalties, was $30.85.

As conclusions of law upon the facts found, the court stated:   (1) That the sale by the treasurer of the city of Elwood, under which the appellants claim title to the real estate in suit, is invalid and insufficient to convey title to the appellants, and should be set aside; (2) that the amount for which said real estate was sold at the sale made by the treasurer, with all accruing interest, penalties, and expenses incident to said sale, in the sum of $31.50, with the costs of the suit, is declared a prior lien on said real estate to any claim of the defendant the National Loan and Savings Association; (3) that the National Loan and Savings Association is entitled to have its title quieted in and to said real estate against the appellants.

In the necessarily long finding of facts, the general character of which we have indicated, the court did not state the omission of anything necessary to the validity or the regularity of the proceedings for the construction of the sewer, or any infirmity in the manner of the enforcement of the assessment therefor, or any imperfection in the conveyance to the appellants.   At the close of the portion of the finding relating to the basis of the alleged title of the appellants, the court stated that "ever since said sale and the issuance of said conveyance of the said city treasurer, the plaintiffs have been, and are at this time, the owners in fee simple of said real estate;" and thereby, as well as by various other portions of the finding of facts, it was indicated that the court did not discover any invalidity or infirmity or want of regularity in the foundation of the title of the appellants. Nothing has been said by counsel in argument here in derogation of the conveyance to the appellants, or of the proceedings leading up to it.   Yet in its conclusions of law,

the court proceeded upon the theory that the appellants, as against the holder of the deed under the foreclosure of the mortgage, had not title, but only a prior lien, from which the latter was entitled to redeem.

By §4290 Burns 1894, it is provided: "Such assessments, with the interest accruing thereon, shall be a lien upon the property so assessed and shall remain a lien until fully paid, and shall have precedence over all other liens, excepting taxes, and shall not be devested by any judicial sale."

It was provided by §4294 Burns 1894, that such an assessment, "as made, together with the interest thereon, shall be a lien upon the several lots or parcels of ground to the same extent that taxes are a lien upon such property, and shall be collectible in the same way that taxes are collectible, \* \* \* or in such manner as the common council or board of trustees, by ordinance, shall prescribe, and the law governing the collection of taxes shall, so far as the same is applicable, regulate and govern the collection of such assessment".

In §4298 Burns 1894, wherein the provision for sale under precept is made, it is enacted that "no sale of said lot or land previous or subsequent to the date of such estimate, and subsequent to the date of such petition or determination of the common council to make such improvement without petition shall invalidate or affect any sale thereof in pursuance of this act." Afterward in the same section, it is provided that the treasurer's certificate of conveyance "shall be valid and effectual to convey all the rights, title and interest of any such owner or purchaser from him as aforesaid, except as hereinafter provided". Later in the same section it is provided, that "the owner of any lot or land sold as aforesaid, or his agent or attorneys, heirs or representatives, may redeem the same at any time within one year after the day of sale," etc. "If such owner, or other person on his behalf, shall fail to redeem such land

within one year, as aforesaid, at the expiration thereof, and on production of the certificate of purchase, the treasurer shall execute to the purchaser, his heirs or assigns, in the name of the city, a conveyance of the real estate so sold, which shall vest in the grantee an absolute estate in fee simple, subject, however, to all claims which the city may have thereon for assessments, or liens, or other incumbrances. Such certificate and final conveyance shall resemble, as nearly as may be, the certificate and conveyance for tax sales, and be *prima facie* evidence of all the facts recited therein."

No question is before us as to the validity or the regularity of the assessment, nor is there any dispute as to the priority of the lien of the assessment over that of the mortgage; but the question is as to the effectiveness of the deed of conveyance upon a sale under a precept, such deed being regularly executed after the expiration of the year for redemption; there being no infirmity alleged as to the assessment, the priority of the lien thereof being admitted, or as to the proceedings for the enforcement of payment of the assessment, or as to the mode or form of conveyance, all the statutory requirements in the premises having been faultlessly performed.

Doubtless it is within the power of the legislature to provide that a valid deed of conveyance of real estate, under a sale thereof for the collection of a tax or a street or sewer assessment, executed after a prescribed period for redemption from the sale, shall confer upon the grantee therein an estate in fee simple, clear and free from, and unaffected by, mortgage liens created either prior or subsequent to the inception of the tax or assessment lien.

There having been no redemption from the sale under the precept within the year granted by the statute, there could be no further right to redeem, unless, in addition to a sale under a precept, and the execution of a deed pursuant thereto, it was also necessary for the holder of the treasurer's deed to bring his suit for foreclosure.

The statute (§4294 Burns 1894) provided for foreclosure of the assessment as a mortgage is foreclosed as an alternative method of enforcement of the assessment lien, and not as a method necessary in addition to collection by sale under precept.

All the notices provided for by the statute are notices by publication in newspapers, or by posting up written or printed notices; but the precept is to be served upon the owner personally, or by copy left at his last or usual residence; but if the owner be unknown, or, as was true in the case at bar, not a resident of the city, by publication in a newspaper. The proceeding, indeed, is against the thing, the real estate, to subject it to payment of the benefit conferred upon it by the improvement, and may result in the extinction of all interests in the property founded upon the owner's title.

If the interest of the owner of real estate may be extinguished, and his right to redeem from an assessment sale under a precept may be cut off, by the execution of the treasurer's deed, without a suit in equity for foreclosure, there can be no greater hardship in giving the deed a like effect upon the holder of a mortgage on the real estate. One who takes a mortgage on a city lot must know that it is liable to be subjected to assessments for municipal improvements, beneficial to the real estate which constitutes his security, and there can be no inconsistency in requiring him to redeem within a limited period if the owner of the real estate fail to do so. With the policy of the statutory law, however, the courts can not concern themselves.

The holder of a mortgage on the real estate sold under a precept for the collection of the cost of a street improvement or a sewer may redeem, we think, from the sale within the year for redemption, for and in the name of the owner; and for the amount paid by him for the protection of his mortgage lien he may be subrogated to the right of the holder of the assessment lien.

Though the title of the holder of such a deed of convey-

ance were invalid, it would not therefore necessarily follow that the assessment would be ineffectual, or that the lien thereof would be destroyed or postponed. At the suit of a holder of such a deed, where the title appears to be invalid, the complainant may have a lien enforced for the amount due him. *Trustees, etc.,* v. *Rausch,* 122 Ind. 167. In the case before us, the title of the appellants under the treasurer's certificate does not appear to be invalid, but the court, giving the deed no effect, charged the real estate with the lien of the assessment, declaring its priority.

In response to suggestions of counsel for the appellee, it may perhaps be proper to say that the inadequacy or relative insignificance of the price at which real estate is sold for taxes or street improvements can not be permitted by the courts to invalidate the title which the statute says shall vest in the grantee. Of course, it is not contemplated as necessary that the contractor who improves a street or constructs a sewer, in order to collect his compensation, shall purchase all the property assessed at its market value, or for an amount sufficient to pay off liens subordinate to his lien.

The lien of the sewer assessment being paramount to all mortgage liens, it must necessarily follow that a valid sale under a precept for the collection of the assessment would confer upon the purchaser an incipient title, subject to the statutory right of the owner, or the mortgagee for him, to redeem within the year, and that upon the execution of the treasurer's deed the holder thereof would take an absolute estate in fee simple, freed from the right of redemption, his title being unimpeachable and unencumbered. To say that the assessment lien is paramount is to say that by a valid sale and conveyance thereunder, as directed by the statute, the real estate will be free from the subordinate lien.

The judgment is reversed, and the cause is remanded, with instruction to state conclusions of law consistent with the foregoing opinion.